CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
DEC 0 1 2006
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 5:06CR00015-1 |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| IVAN GUILLEN-CASTELLANOS[1], | ) | |
| | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Superseding Indictment charging defendant in Count One with knowingly combining, conspiring, confederating, and agreeing with other persons, both known and unknown to the Grand Jury, to knowingly and intentionally distribute, or possess with the intent to distribute five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii), all in violation of Title 21, United States Code, Section 846; in Count Four with knowingly and intentionally distributing a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1); in Count Six with possessing firearms in furtherance of a drug trafficking offense which could have been prosecuted in a Court

---

[1]Defendant's name in the style of the case in the Superseding Indictment and plea agreement are inconsistent. The Superseding Indictment hyphenates Guillen and Castellanos. However, the plea agreement includes no hyphen between Guillen and Castellanos.

of the United States, specifically, the possession of methamphetamine on February 15, 2006, with intent to distribute, all in violation of Title 18, United States Code, Section 924(c); and in Count Seven with knowingly and intentionally possessing 50 or more grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with intent to distribute, all in violation of Title 21, United States Code, Section 841(a)(1).

On November 22, 2006, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Counts One and Six of the Superseding Indictment. The government has agreed to ask the Court to dismiss the remaining counts of the Superseding Indictment upon acceptance of plaintiff's guilty plea.

At this hearing, the defendant was placed under oath and testified that his full legal name is Ivan Guillen Castellanos and that he was born in El Salvador on January 3, 1984. He also testified that he attended school up to high school in El Salvador and has received eight months of education in the United States. The defendant stated that although he has been in the United States for five years, he can only understand "a bit" of English and can only speak the language "a little bit."[2] The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offenses.

The defendant testified that he had received a copy of the Superseding Indictment pending

---

[2] An interpreter assisted the defendant during the hearing.

Case 5:06-cr-00015-GEC-BWC   Document 154   Filed 12/01/06   Page 2 of 10   Pageid#: 355

against him and that he had fully discussed the charges therein, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises, assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offenses with which he is charged in Counts One and Six are felonies, and that if his plea is accepted, he will be adjudged guilty of those offenses. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $200, and that, at the discretion of the court, he may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862(a), for a period of years or indefinitely, as set forth in the plea agreement. The defendant acknowledged that he consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or illegal contraband seized by law enforcement officials. The defendant further acknowledged that he consented to forfeit any right, title and interest he has in assets purchased with proceeds of his illegal activity, directly or indirectly and that such a forfeiture of property is proportionate to the degree and nature of the offenses he committed and does not raise any of the concerns addressed in *United States v. Austin*, 113 S.Ct. 2801 (1993). The defendant testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in Counts One and Six, including any facts related to sentencing. The defendant testified that he also understood that the government retained its right to appeal sentencing issues. The defendant stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within thirty days of the date of the plea agreement. The

3

defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum statutory penalty provided by law for the offense with which he is charged in Count One, is life imprisonment and a fine of $4,000,000, together with supervised release. The defendant was also informed that the statutory minimum sentence for Count One is ten years imprisonment.[3] The defendant was informed that the maximum statutory penalty for Count Four is twenty years imprisonment and a fine of $1,000,000, together with supervised release. The defendant was informed that the statutory mandatory penalty for Count Six is five years imprisonment and a potential fine of up to $250,000. The defendant was informed that the term of imprisonment imposed in Count Six must be set to run consecutive to any other sentence he receives. The defendant was informed that the maximum possible penalty for Count Seven is forty years imprisonment and a fine of $2,000,000, together with supervised release. The defendant was further informed that the mandatory sentence for Count Seven is five years imprisonment.[4]

The defendant was informed that under the Sentencing Reform Act of 1984, the United States

---

[3] Defendant was informed that he could be sentenced to less than ten years imprisonment if the government makes a motion pursuant to Title 18, United States Code, Section 3553(e) on his behalf, or if he qualifies for the "Safety-Valve" set forth in Title 18, Section 3553(f).

[4] Defendant was informed that he could be sentenced to less than five years imprisonment if the government makes a motion pursuant to Title 18, United States Code, Section 3553(e) on his behalf, or if he qualifies for the "Safety-Valve" set forth in Title 18, Section 3553(f).

Case 5:06-cr-00015-GEC-BWC   Document 154   Filed 12/01/06   Page 4 of 10   Pageid#: 357

Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and because he meets the listed criteria, he should be granted an additional one-level (1) reduction under USSG § 3E1.1(b) if his offense level is 16 or greater. The defendant also stated that he understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion, he must provide such assistance in a manner set forth in the plea agreement. The defendant stated that he understood that a determination as to whether he had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office. The defendant was informed that the government will recommend that he receive a sentence of incarceration between the low end and middle of the applicable sentencing guidelines range and that the government will object to any motion for downward departure that he might make. The defendant stated that he understood that any information given by him during a proffer or cooperation would not be used against him to enhance his sentence under USSG § 1B1.8.

The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence

5

report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been effective. The defendant testified that he understood the possible consequences of his plea. The defendant asked the court to accept his plea of guilty to Counts One and Six of the Superseding Indictment.

Case 5:06-cr-00015-GEC-BWC   Document 154   Filed 12/01/06   Page 6 of 10   Pageid#: 359

## THE GOVERNMENT'S EVIDENCE

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

If this case had gone to trial, the United States would have presented evidence that a group of individuals, some related by blood and others by affinity, began to distribute methamphetamine, in ounce and multiple-ounce quantities per transaction, beginning about January of 2005 and continuing until arrest of the participants on February 15, 2006. Most of these transactions occurred in or near the Chestnut Ridge apartment complex near Harrisonburg, Virginia, in the Western Judicial District of Virginia. One distinctive characteristic of this group was that they shared a cellular telephone number, apparently on some informal rota, so a prospective purchaser did not necessarily know which conspirator would answer the telephone and which might make the delivery and collect the money.

More specifically, the testimony would have been that, on February 10, 2006, a search warrant was executed at an apartment shared by Eric Clark Turner and Kimberly Litten, located on Sweet Magnolia Lane, just north of Harrisonburg on Route 11. Pursuant to this search warrant, the officers seized approximately 70 grams of methamphetamine, 21 firearms, scales, packaging material, and a quantity of ammunition. When interviewed after being advised of his Constitutional rights, Turner identified his codefendants at Chestnut Ridge as his source for methamphetamine, and agreed to cooperate with the agents in their ongoing investigation. Other evidence would establish that both Turner and Litten sold methamphetamine from this apartment. According to Turner and corroborated by other evidence, he was one such wholesale customer, who bought repeatedly from the other named defendants in ounce to multiple ounce quantities for resale.

7

Significant to the allegations made in Count Two of the indictment, to which Mr. Turner and Ms. Litten are pleading guilty, and in addition to the twenty other firearms recovered throughout the small apartment where they both lived, the testimony would have been that, after the seizure of these firearms, Litten acquired a new SKS semiautomatic assault-type rifle through the assistance of a straw purchaser and provided that rifle to Turner.

After February, 10, 2006, as detailed in the indictment, Turner made controlled purchases of methamphetamine from various members of this group in and from the Chestnut Ridge Apartments. On February 15, 2006, immediately before one such negotiated transaction, law enforcement officers and agents executed a search warrant at the apartment, in which apartment was located the two Meza Duran brothers and the two Guillen Castellanos brothers named in the indictment, along with Juan Casteneda Renteria. Also seized pursuant to that search warrant was a .38 caliber revolver, a .22 caliber pistol, the cell telephone used to arrange the prior transactions, and about nine additional ounces of methamphetamine.

Significant to the allegations made in Count Six of the indictment, to which Mr. Ivan Guillen Castellanos is pleading guilty, the testimony would have been that when the officers entered the Chestnut Ridge Apartment to execute the search warrant on February 15, three defendants were found hiding in a walk-in closet in which most of the methamphetamine and one of the guns were found, but Ivan Guillen Castellanos was found in a different bedroom, lying on a mattress under which a Smith and Wesson .38 caliber revolver was located. Other testimony would have established that Ivan Guillen Castellanos acquired that revolver through or during a drug trafficking transaction, that he carried and it and displayed it during other interactions with methamphetamine customers.

The evidence would have been that the two Meza Duran brothers and the two Guillen

Castellanos brothers seldom stored a large quantity of methamphetamine at the Chestnut Ridge Apartment, but that each of the four of them arranged, negotiated, and completed transactions in response to telephone calls and visits from regular customers, as supplied by the codefendant Rentaria, according to post-*Miranda* statements from each of the Mesa Duran brothers.

Each firearm mentioned in this summary meets the statutory definition of firearm" in Title 18. Every substance identified in this summary as methamphetamine was tested at the DEA Regional laboratory and was found to contain a detectable amount of methamphetamine. According to the seizures, purchases, and debriefs of the defendants, the named participants acquired and distributed, or possessed with intent to distribute, well in excess of the five hundred grams alleged in Count One of the indictment.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;
2. The defendant is aware of the nature of the charges and the consequences of his plea;
3. The defendant knowingly and voluntarily entered a plea of guilty to Counts One and Six of the Superseding Indictment; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Counts One and Six and adjudge him guilty of those offenses. The undersigned DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for February 8, 2007 at 11:30 a.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
United States Magistrate Judge

12-1-06
Date